# BALDWIN-UNITED CORPORATION and D. H. BALDWIN COMPANY *v.* Linda N. GARNER, Insurance Commissioner for the State of Arkansas

84-162                                          678 S.W.2d 754

### Supreme Court of Arkansas
### Opinion delivered October 22, 1984

*Jacob & Sherman,* by: *William F. Sherman,* for Jack Mendel, G. William Ogden, Trustees for Richard J. Ogden, and Richard J. Ogden, Individually,

*Wright, Lindsey & Jennings,* and *Debevoise & Plimpton,* for Baldwin-United Corp. and D. H. Baldwin Co.

*Wood Law Firm,* by: *Doug Wood,* and *Freytag, Laforce, Rubinstein and Teofan,* by: *Karl L. Rubinstein,* for appellee.

WEBB HUBBELL, Chief Justice. Appellants Baldwin-United Corporation and D. H. Baldwin Company appeal from the circuit court's order which adopted a Plan of Rehabilitation proposed by appellee, the Arkansas Insurance Commissioner, and denied appellants' motion to amend the Plan. The Plan concerns three Arkansas insurance companies: National Investors Pension Insurance Company, National Investors Life Insurance Company, and Mt. Hood Pension Insurance Company. All three companies are appellants' subsidiaries. Appellants argue two points on appeal. First, they assert that the circuit court erred in making a series of rulings about its jurisdiction which prevent appellants from asserting claims against their subsidiaries in any other forum. Second, appellants argue that the Plan of Rehabilitation is not fair and equitable because it will compensate policyholders far beyond what they would have received had the insurance companies never encountered financial difficulties. We affirm.

Baldwin-United Corporation is the corporate parent of the Baldwin-United group of companies. D. H. Baldwin Company is a subsidiary of Baldwin-United. Two of the Arkansas insurance subsidiaries, National Investors Pension Insurance Company and National Investors Life Insurance Company, are direct subsidiaries of D. H. Baldwin. Mt. Hood Pension Insurance Company is an indirect subsidiary of Baldwin-United.

The Arkansas insurance companies' principal insurance product is a single premium deferred annuity (SPDA). An SPDA guarantees the purchaser the right to a deferred stream of annuity payments in exchange for the payment of a one-time premium. Interest is periodically credited to the policyholder's account at a specified crediting rate. The policyholder can withdraw principal and interest by surrendering the policy, by making periodic withdrawals, or by electing to receive annuity payments.

On July 13, 1983, the circuit court entered Orders of Rehabilitation concerning each of Appellants' Arkansas insurance subsidiaries, appointed the Arkansas Insurance Commissioner as Rehabilitator of the insurance companies, and ordered her to take possession of all the insurance companies' property and to propose a plan for their rehabilitation.

In its July 13, 1983 order, the court entered an injunction "restraining all persons and other legal entities" from "the making of claims or the commencement of further prosecution of any actions in law or equity or administrative [proceedings] except in this Court," and from "the making of any levy, garnishment or execution against any of the property, personal or real, of respondent or its assets or its policyholders."

On September 26, 1983, appellants entered reorganization proceedings under Chapter 11 of the Federal Bankruptcy Code, 11 U. S. C. §§ 1101 *et seq.* Those proceedings are pending in the United States Bankruptcy Court for the Southern District of Ohio.

On October 17, 1983, appellee submitted to the court below a proposed Plan of Rehabilitation. The proposed Plan sought to provide the Arkansas insurance companies, within 3-1/2 years, with assets at least sufficient to support the amount of the accumulated value of their single premium annuities as of May 1, 1984 plus, at a minimum, an assured rate of interest from May 1, 1984 with the possibility of receiving a higher crediting rate from May 1, 1984.

Appellants intervened in these proceedings and filed a motion to amend the Plan. Appellants challenged: (1) the parts of the Plan which continued the July 13 injuction of actions against the insurance subsidiaries in any other forum and provided that no judgment obtained elsewhere would be paid until the rehabilitation ended and all policyholder claims had been satisfied; (2) the part of the Plan which subordinated all claims against the assets to the claims of the policyholders; and (3) the part of the Plan which proposed certain rates of interest for some of the

options available to holders of single premium deferred annuities. The court held hearings concerning the proposed Plan and various motions to amend, and on March 23, 1984, the court approved the Plan of Rehabilitation substantially as proposed and denied appellants' motion to amend.

In addition to its ruling on the Plan, the court made three rulings concerning its purported power over all controversies relating to the insurance companies. First, the court found that it had exclusive jurisdiction to adjudicate all claims involving the property of the insurance subsidiaries:

> [T]he Court has exclusive jurisdiction of the [subsidiaries] and the assets of the [subsidiaries] and has exclusive jurisdiction with respect to the administration of the assets of the [subsidiaries] to determine the validity or invalidity of all claims against such assets.

Second, the court continued the injunction originally entered in its July 13 Rehabilitation Order:

> The injunctions issued by the Court on July 13, 1983 are hereby reaffirmed the same being reasonable and necessary to protect the jurisdiction of the Court . . . and all persons or other entities are hereby enjoined from the commencement, prosecution, or further prosecution of any suit, action, claim or proceedings against the [subsidiaries] and their assets or the Receiver other than in this Court except to the extent, if any, this Court grants it permission to do so upon written Orders entered hereafter upon good cause shown

Finally, the court announced it would not recognize any judgment affecting the Arkansas insurance companies from any other court:

> No sale, assignment, transfer, hypothecation, lien, security interest, judgment, order, attachment, garnish-

ment or other legal process of any kind or nature with respect to or affecting these [insurance companies] or their assets or the Receiver shall be effective or enforceable unless entered in this Court in accordance with [the injunction provision quoted above].

## I.

Appellants claim that, beginning in 1981, they gave their Arkansas insurance subsidiaries cash, securities, and other assets for less than fair consideration. Appellants believe that they may be entitled to set aside these transfers as fraudulent conveyances and preferential transfers under Bankruptcy Code §§ 544, 547, and 548. Although the record is silent as to the size or exact nature of their claims, appellants assert on appeal that the transactions could amount to hundreds of millions of dollars. Appellants have not presented any other claims other than those they claim might arise under the bankruptcy act.

Appellants contend that the circuit court erred in making a series of rulings concerning its purported jurisdiction which prevent appellants from presenting their fraudulent conveyance and preferential transfer claims in any forum other than the rehabilitation court. By these rulings appellants are enjoined both from bringing their claims in bankruptcy court and from petitioning the bankruptcy court to determine whether certain assets should be included in the bankruptcy estate. The bankruptcy court is also enjoined from attempting to exercise jurisdiction over assets which appellants assert might be determined to be part of appellants' bankruptcy estate. Appellants claim that Congress has given them the right to bring their claims in federal bankruptcy court and that the state court cannot impair that right. Appellants contend the central issue is whether the court can deny appellants their right to present their claims in a federal forum.

Arkansas has enacted a comprehensive statutory scheme dealing with impaired insurance companies. This scheme is designed to protect the interests of policyholders and to

provide for the adjustment of the right of creditors and policyholders in the event of insolvency. This scheme expressly authorizes the issuance of injunctions. Ark. Stat. Ann. § 66-4804 (Repl. 1980) provides:

> The court may at any time during a proceeding under this chapter issue such other injunctions or orders as may be deemed necessary to prevent interference with the Commissioner or the proceeding, or waste of the assets of the insurer, or the commencement or prosecution of any actions. . .

The injunction issued by the rehabilitation court does not exceed the court's statutory authority, nor do appellants so contend.

Appellants argue a Congressionally mandated right to pursue their claims in federal bankruptcy court. It is of prime significance, however, that insurance companies are not eligible to be debtors in bankruptcy. 11 U. S.C. 109 (b) (2) and (d). Congress has thus decided that rehabilitation and liquidation of insurance companies should be left to the several states. By exempting state insurance liquidation and rehabilitation proceedings, Congress prevented bankruptcy courts from interfering with the rights of insureds protected by state regulations. See *In Re Equity Funding Corporation of America,* 396 F. Supp. 1266, 1275, (C. D. Cal. 1975)

Of even greater significance is the fact that Congress has expressly left the regulation of insurance to the states by its passage of the McCarran-Ferguson Act, 15 U. S. C. 1011 *et seq.* This act provides in pertinent part:

> The Congress hereby declares that the continued regulation and taxation by the several states of the business of insurance is in the public interest, and that silence on the part of Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several states.

\* \* \*

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any state for the business of insurance . . . unless such Act specifically relates to the business of insurance.

The purpose of the McCarran-Ferguson Act was to preserve intact from any federal intrusion, existing and future state regulation of the insurance industry subject only to the exceptions expressly provided. *Prudential* v. *Benjamin,* 328 U.S. 408, 420-30 (1946). The McCarran-Ferguson Act does not purport to make the states supreme in regulating all activities of insurance companies. Insurance companies may do many things which are subject to federal regulation, but when they are engaged in the business of insurance, the Act applies. *S.E.C.* v. *National Securities,* 393 U.S. 453, 459-60 (1969). When a state does act to regulate the insurance business, particularly in respect to the rights of policyholders, it is free from the intervention of Congress in the absence of a specific law concerning that matter.

Appellants assert that state rehabilitation proceedings are not business of insurance within the meaning of the McCarran-Ferguson Act. The focus of "business of insurance" is the relationship between the insurer and an insured, particularly the policy's reliability. Statutes aimed at protecting or regulating the relationship between an insurance company and a policyholder, directly or indirectly, are laws regulating the business of insurance. *S.E.C.* v. *National Securities,* at 460. The Plan of Rehabilitation protects over 300,000 policyholders throughout the United States by attempting to provide the Arkansas insurance companies with assets at least sufficient to support the full amount of the accumulated value of the annuities. Ark. Stat. Ann. § 66-4810 (Repl. 1980) provides that the order to rehabilitate a domestic insurer shall direct that the Commissioner take possession of the company's property and "conduct the business." The Arkansas statute which authorizes the rehabilitation court to issue an injuction is a law enacted for "the business of insurance" within the meaning of the McCarran-Ferguson Act. Ark. Stat. Ann. § 66-4804 (Repl. 1980).

The McCarran-Ferguson Act prohibits Congress from impairing any law enacted by a state for the business of insurance unless such congressional action specifically relates to the business of insurance. Therefore, since the Bankruptcy Act does not specifically relate to the business of insurance, and indeed expressly excludes insurance companies from being debtors in bankruptcy, appellants cannot pursue their claims under the Bankruptcy Act once enjoined by a valid state injunction. If any meaning is to be given to the congressional exclusion of insurance companies from the Bankruptcy Act and the mandate of the McCarran-Ferguson Act, it must be that the determination of rights among an insurance company's creditors must be left to state proceedings.

We do not hold that the McCarran-Ferguson Act prohibits a person from making a claim in Bankruptcy against an insurance company under any circumstances. In this instance, however, an insurance company is being rehabilitated pursuant to a state statutory scheme, and the rehabilitation court found it necessary to enjoin other proceedings in order to secure an orderly rehabilitation. Therefore, the McCarran-Ferguson Act prevents the Bankruptcy Act from being used to invalidate or impair the Arkansas statutes. The appellants do not have an absolute right to pursue their claims in bankruptcy court.

The rehabilitation of these three insurance companies is of vital state concern. On July 13, 1983, the appellants joined in appellee's petition to seek an Order of Rehabilitation. The parties joined in this effort in order to protect the interest of the companies' assets, the companies' creditors, the policyholders, and the public at large. The over 300,000 policyholders affected by the rehabilitation and the appellants' bankruptcy proceedings are at a distinct economic disadvantage in the protection of their interests. An orderly rehabilitation of the three insurance companies may provide the policyholders the only opportunity to recover their investments. The rehabilitation court needs to be able to subject the companies and those asserting claims to a coherent and compulsive legal process, or it would be severely constrained in its efforts. The rehabilitation court's

injunction does not leave the appellants without remedies. They may petition the court for relief from the injunction or litigate their claims in rehabilitation court. The trial court did not err in finding that in order to secure an economical, efficient, and orderly rehabilitation, it was essential not only that title and custody to the insurance companies' assets be entrusted to a single court, but that all claims to those assets be adjudicated in that same court.

## II

Appellants' final argument is that the approved Plan of Rehabilitation is contrary to law and is not fair or equitable to the extent it will compensate policyholders far beyond what they would have received had the subsidiaries never encountered financial difficulties.

The Rehabilitation Plan offers policyholders several options with respect to their policies. Options A and B offer policyholders a crediting rate of the average of first year crediting rates offered by other insurers on comparable policies plus .5%. The .5% bonus is to provide compensation to policyholders for the difficulties encountered in the rehabilitation process. The court denied appellants' motion to amend the Plan to base the crediting rate on the average rate offered by other issuers which are not in their first year guaranteed period plus .5%.

Appellants assert that first year rates guaranteed during the first year are artificially high to induce sales. After the guaranteed period, these high rates are reduced significantly to reflect true market conditions. Appellants assert that unless the court's order is reversed the policyholders will receive a perpetual first year guaranteed rate throughout rehabilitation.

The court found the Plan "is fair, just, and equitable to all interested persons, creditors, claimants, and entities affected by the Plan." The standard of review is whether the trial court's finding is clearly erroneous. ARCP Rule 52.

The policies sold by the appellants' insurance com-

panies had a one year minimum crediting rate that was substantially higher than the interest rate guaranteed in subsequent years. However, significant reduction in the rate would have allowed the policyholders to surrender their policies and receive their full policy accumulation, plus the high first year rates. The policyholder could then obtain a new first year rate from another insurance company. The record reflects that appellants' companies would have had to maintain high crediting rates to keep their business. Under the Plan of Rehabilitation the policyholders are locked in and cannot reinvest with another company. The Rehabilitation Plan's crediting rates have a reasonable basis, and the adoption of the rates is not clearly erroneous.

Affirmed.