APPLETON PAPERS, INC., Plaintiff-Respondent,

v.

The HOME INDEMNITY COMPANY and The Home Insurance Company, Defendants-Appellants,

AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Royal Surplus Lines Insurance Company, Royal Indemnity Company, Agricultural Insurance Company, American National Fire Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, TIG Insurance Company, CIGNA Specialty Insurance Company, Fireman's Fund Insurance Company, Inc., Reliance National Indemnity Company, International Insurance Company, The Insurance Company of North America, Philadelphia, Pennsylvania, The Hartford Casualty Insurance Company, Federal Insurance Company, The Insurance Company of the State of Pennsylvania, Agricultural Excess and Surplus Insurance Company, First State Insurance Company and Lexington Insurance Company, Defendants.

Court of Appeals

*No. 99–1567. Oral argument February 10, 2000.—Decided April 4, 2000.*

## 2000 WI App 104

(Also reported in 612 N.W.2d 760.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Mark S. Nelson* and *Philip J. Tallmadge* and *Nelson, Dries, Connell & Kramer, S.C.* of Brookfield, and *Michael J. Duffy* and *Tressler, Soderstrom, Maloney & Priess* of Chicago, Illinois.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert P. Thavis* and *Steven P. Zabel* of *Leonard, Street & Deinard Professional Association* of Minneapolis, Minnesota, and *Edwin F. Bush* of *Corporate Legal Services* of Appleton.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. The Home Insurance Co. and the Home Indemnity Co. (Home) appeal an order enjoining Home from pursuing both its federal district court action to compel arbitration under the Federal Arbitration Act (FAA),[1] and the arbitration proceedings it initiated against Appleton Papers, Inc.[2] Home sought to arbitrate the number of deductibles and the amount of retrospective premiums it could charge Appleton under deductible and retrospective premium

---

[1] *See* 9 U.S.C. §§ 1 to 16. All references to the United States Code refer to the 1994 version.

[2] We granted leave to appeal this nonfinal order on July 9, 1999, pursuant to WIS. STAT. RULE 808.03(2) (1997–98). All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

41

agreements. The agreements all contained mandatory arbitration clauses. The circuit court enjoined Home from pursuing remedies under the FAA. In doing so, it implicitly relied on the McCarran-Ferguson Act's[3] grant of supremacy to state laws regulating the business of insurance to "reverse preempt" the FAA.

¶ 2.  McCarran-Ferguson notwithstanding, Home contends that the circuit court's injunction is unconstitutional because a state court is without power to enjoin ongoing federal proceedings. It next argues that even if McCarran-Ferguson empowers a state court to enjoin a party from pursuing a federal court action, here the essential elements of reverse preemption are lacking. Further, Home asserts that Appleton is not entitled to an injunction because it has failed to show an inadequate remedy at law, irreparable harm or that it is likely to succeed on the merits. Finally, it contends that the circuit court exceeded its authority by making ultimate findings on the issue of arbitrability.

¶ 3.  We hold that the circuit court may not enjoin Home from presenting to a federal court a question concerning the application of a federal remedy. Wisconsin courts have no power to limit, modify, or control the power of federal courts by enjoining a litigant from pursuing an *in personam* action seeking remedies in that court. Because we determine that the circuit court may not enjoin Home from pursuing a determination in federal court of the applicability of a federal remedy, the injunction should not have issued. Accordingly, the order is reversed.

¶ 4.  Because of the potential application of McCarran-Ferguson to this case, the federal court will

---

[3] *See* 15 U.S.C. §§ 1011 to 1015.

necessarily determine the application of Wisconsin laws regulating the business of insurance to the arbitration clause. We therefore determine the validity of the arbitration clauses under Wisconsin law. We reject Home's various contentions that the deductible and retrospective premium agreements are not governed by the insurance laws of this state. We conclude that WIS. STAT. § 631.85 applies to the agreements and invalidates the arbitration clauses.

## BACKGROUND

¶ 5.  3M sued Appleton in 1995 for patent infringement, antitrust violations, and state law tort claims. Home and Royal Indemnity Company provided primary liability coverage to Appleton; Home from 1989 through 1993, and Royal in 1995 and 1996.[4] In 1996, Appleton initiated this litigation against its liability insurers, including Home and Royal. Appleton alleged that the insurers failed to defend it in 3M's lawsuit and sought, inter alia, a declaration that it was entitled to coverage for losses incurred in defending, settling or adjudicating the 3M claims.

¶ 6.  In 1989, Home issued a general liability policy to Batus, Appleton's then parent corporation. The policy provided coverage for Appleton and included a deductible endorsement. Home and Batus also had an agreement entitled "Deductible Reimbursement and Security Agreement" that "establish[ed] procedures in accordance with and to reflect their agreement" that Home would pay the entire loss and seek reimbursement of the deductible later. That agreement called for

---

[4] Another insurer provided Appleton with coverage during 1994; its obligations are not at issue here.

43

mandatory arbitration and the application of New York law.

¶ 7. In 1990, Home issued a general liability policy with a deductible endorsement directly to Appleton. Home and Appleton had a deductible reimbursement agreement similar to the one between Batus and Home, with identical choice of law and arbitration provisions.

¶ 8. In 1991, 1992, and 1993, Home again issued policies to Appleton. Home and Appleton had agreements concerning each of these policies entitled "Paid Loss Retrospective Plan Premium Agreement."[5] The agreements all contained mandatory arbitration provisions. According to the agreements, a Retrospective Premium endorsement attached to each policy was also incorporated into and made part of the agreement. Only the 1993 agreement contained a choice of law clause.

¶ 9. In 1997, Appleton moved for summary judgment on the issue of the insurers' duty to defend. Home, Royal, and Appleton resolved the motion by entering into a stipulation that was later incorporated into a court order. Home and Royal agreed to pay Appleton's defense costs in the 3M action. The stipulation required the parties to first negotiate any issues regarding the application or interpretation of any

___

[5] Under a retrospective rating plan, the premium, subject to minimum and maximum factors, is a function of losses paid by the insurer on behalf of the insured plus certain costs and expenses associated with adjusting claims and defending the insured. Premiums increase as claims are paid and expenses incurred. Premiums might also decrease if the insured has a better than average loss experience. A determination of the actual amount due and owing is made after the end of the policy period. The premium is then adjusted retrospectively.

deductible or "retroactive loss pay" provision. If unable to resolve their differences, they were to submit the dispute to the circuit court.

¶ 10.   Ultimately, the parties were unable to resolve their dispute over the deductibles and retrospective premiums. In March 1999, Home billed Appleton for $8,591,326 under the deductible and retrospective premium agreements for defense expenses incurred in the 3M litigation. In April, Appleton moved the circuit court for partial summary judgment on the issue of how many deductibles or retrospective premiums were to apply to the 3M lawsuit under the Home and Royal policies. Home responded by petitioning for arbitration of the issue and commencing an action in the United States District Court for the Southern District of New York under the FAA to compel arbitration.

¶ 11.   Appleton appeared in the federal action, while moving the Outagamie County Circuit Court to enjoin Home from pursuing both the arbitration and the federal action. Appleton argued before both courts that the arbitration provisions were invalid under Wisconsin insurance law that preempts the FAA.[6] It further contended that Home had agreed to litigate in the circuit court the issue it now sought to arbitrate.

---

[6] The policy and agreements Home issued in 1989 were delivered to Batus in Louisville, Kentucky. The circuit court decided that Kentucky insurance law applied to the 1989 policy and deductible agreement. Thus, in addition to applying Wisconsin law to subsequent agreements, the circuit court held that, under Kentucky law, the arbitration clause in the 1989 deductible agreement was invalid.

We decline to address the application of Kentucky insurance law to the 1989 policy and agreement. We are in no better position than the federal court to authoritatively interpret Kentucky law.

¶ 12. At the conclusion of the injunction hearing, the circuit court ordered Home to dismiss without prejudice both the arbitration proceeding and the federal court action. The circuit court determined that Appleton would sustain irreparable harm if forced to appear in the federal action or at arbitration. It concluded that the parties had earlier agreed that the issues Home sought to arbitrate would be decided in Outagamie County Circuit Court[7] and, in any event, the agreements' arbitration provisions were invalid under Wisconsin law governing arbitration provisions in insurance contracts. The court implicitly determined that it had the power to enjoin Home from pursuing remedies under the FAA. It relied on the McCarran-Ferguson Act's grant of supremacy to state laws regulating the business of insurance to "reverse preempt" the FAA. Home appeals that order.[8]

## ANALYSIS

¶ 13. We first examine whether the circuit court is empowered to enjoin Home from pursuing its action

[7] In making its finding of irreparable harm, the circuit court was presumably disturbed by Home's tactics, as are we. Appleton negotiated to resolve the deductible or retrospective premium issues before the circuit court, applying Wisconsin law. Home agreed to those terms in the stipulation, resolving Appleton's summary judgment motion. Home's federal action seeks to deprive Appleton of what it had bargained for. In the arbitration proceeding, the arbitrators are not required to follow any law in rendering their decision. We would prefer to reach a decision whereby Home would not benefit from its unadorned and unjustifiable gamesmanship.

[8] Pending resolution of this appeal, the parties stipulated that the circuit court's order is stayed as well as the arbitration and the petition to compel arbitration in federal court.

46

in federal court to compel arbitration under the FAA. Home contends that the circuit court did not have the authority to issue the injunction because it unconstitutionally impairs federal court jurisdiction. Home claims that state courts are without the power to restrain federal courts in *in personam* actions. It asserts that directing the injunction to Home, rather than the federal court, is of no legal consequence.

¶ 14. Appleton does not dispute that state courts ordinarily may not enjoin federal court proceedings. It contends, however, that McCarran-Ferguson created an exception to this rule by authorizing state insurance law to "reverse preempt" other federal law. It claims that WIS. STAT. § 631.85 is a state law regulating insurance that invalidates the agreements' arbitration clauses. According to Appleton, § 631.85 reverse preempts the FAA and empowers a state court to enjoin a federal court because there is no federal remedy available.

¶ 15. *Donovan v. Dallas*, 377 U.S. 408 (1964), and *General Atomic Co. v. Felter*, 434 U.S. 12 (1977), set out the general rule that a state court may enjoin neither federal court proceedings nor a party from pursuing federal remedies in federal court. In *Donovan*, a plaintiff class sought a state court injunction against construction of an airport runway and issuance of municipal bonds for that purpose. *See id.* at 408–09. After losing in state court and exhausting their appeals, many of the named plaintiffs, together with a group of new plaintiffs, filed an action in federal court raising issues substantially identical to those already litigated in the state action. *See id.* at 409. The City of Dallas moved to dismiss the federal action and obtained a state court injunction prohibiting all mem-

47

bers of the original class from further prosecuting the federal action and from filing any new actions in any court. *See id.* at 409–10. The federal district court dismissed the action. *See id.* at 410. Some plaintiffs appealed the order, and others commenced an action to enjoin the Texas courts from enforcing the injunction. *See id.* Both groups of plaintiffs were found in contempt. *See id.* The Supreme Court examined the validity of the injunction and contempt judgment. *See id.* at 411.

¶ 16.  The *Donovan* Court noted the historical rule that state and federal courts may not interfere with or try to restrain each other's proceedings. *See id.* at 412. It also reaffirmed the rule that, "where the judgment sought is strictly *in personam*, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other." *Id.* The Court noted that the plaintiffs had a right to file their second action in federal court by virtue of congressional legislation. *See id.* The Court said, "whether or not a plea of res judicata in the second suit would be good is a question for the federal court to decide." *Id.* It further stated that the "right [to pursue federal court remedies] was granted by Congress and cannot be taken away by the State." *Id.* at 413.

¶ 17.  The Supreme Court also stated that "it does not matter that the prohibition here was addressed to the parties rather than to the federal court itself." *Id.* The heart of the rule is that "where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court." *Id.*

¶ 18. *General Atomic* confirmed *Donovan's* holding that "the rights conferred by Congress to bring *in personam* actions in federal courts are not subject to abridgement by state-court injunctions, regardless of whether the federal litigation is pending or prospective." *General Atomic*, 434 U.S. at 17. It noted that the right to pursue federal remedies and take advantage of federal procedures and defenses in federal actions may not be restricted by a state court. *See id.* at 18–19.

¶ 19. The federal remedy Home invokes is the FAA, which creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983). The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Normally, the FAA would preempt conflicting state law under the Supremacy Clause, which provides:

> This constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding.

U.S. CONST., art. VI, cl. 2.

¶ 20. Against this backdrop, we consider the impact of the McCarran-Ferguson Act, which was enacted to "restore the supremacy of the States in the realm of insurance regulation." *United States Dept. of Treasury v. Fabe*, 508 U.S. 491, 500 (1993). In relevant part, the Act provides: "No Act of Congress shall be

construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance . . . ." 15 U.S.C. § 1012(b). The McCarran-Ferguson Act reverses the usual preemptive effect of federal law flowing from the Supremacy Clause. *See Munich Amer. Reinsur. Co. v. Crawford*, 141 F.3d 585, 590 (5th Cir. 1998). In the narrow range of cases involving state regulation of the insurance industry, McCarran-Ferguson clothes state legislation in federal garments. *See id.* Absent a Congressional act specifically relating to the business of insurance, McCarran-Ferguson provides that state law controls over conflicting federal legislation. *See id.* at 595–96.

¶ 21.    The *Donovan* Court noted that the authority to relax the "judicially declared rule that state courts are completely without power to restrain federal-court proceedings in *in personam* actions [remains with Congress]." *Id.* at 412–13. The Supreme Court, however, has not specifically considered whether under the McCarran-Ferguson Act, state courts may enjoin federal proceedings.

¶ 22.    Appleton claims that McCarran-Ferguson provides an exception to the rule forbidding state courts from enjoining federal proceedings. Appleton relies on *Munich's* interpretation of McCarran-Ferguson as authority for the circuit court's injunction. In *Munich*, Oklahoma law vested exclusive jurisdiction over insurance company delinquency proceedings in the Oklahoma receivership court and authorized that court to enjoin any action that interfered with its proceedings. *See id.* at 596. The *Munich* court determined that these provisions were within the scope of McCarran-Ferguson because they were enacted for purposes

of regulating the insurance business. *See id.* As a result, the court held that Munich's action, initiated under the FAA, must be dismissed because the FAA was reverse preempted to the extent that it permitted Munich to bring an action against a delinquent insurer's assets in a forum other than the Oklahoma receivership court. *See id.*

¶ 23.   Appleton's reliance on *Munich* for the proposition that McCarran-Ferguson empowers state courts to enjoin federal proceedings is misplaced. On the question of a state court's authority to enjoin federal proceedings, the fifth circuit stated:

> We surely are not saying that a State has the power to enjoin a party generally from pursuing federal remedies in federal court. Nor are we saying that Oklahoma law divested the district court of its diversity jurisdiction. . . . What we are saying is that, by operation of the McCarran-Ferguson Act, a federal act that permits states to exert broad power over the insurance industry, state laws regulating the business of insurance may suspend federal remedies based on conflicting federal statutes—here, the FAA. We therefore hold that the FAA is reverse pre-empted under the McCarran-Ferguson Act, thereby leaving the district court without the power to compel arbitration in this case.

*Id.* at 595–96. The *Munich* court did not say that the state court could enjoin the federal proceeding, nor did it honor the injunction by immediately dismissing the federal action. Rather, the court decided the issue whether a federal remedy was available to Munich, concluding that none was available and that dismissal was therefore appropriate.

¶ 24.   No federal decision concerning state court injunctions issued under insurance regulation laws

has held that a state court may enjoin either a federal court or a party from pursuing federal remedies.[9] Rather, the focus of these decisions was the application of McCarran-Ferguson and its impact on the federal remedy. If McCarran-Ferguson preempted an otherwise available federal remedy, the federal court was without power to grant relief pursuant to that remedy and dismissal of the federal action was appropriate. Significantly, however, in each instance the federal court determined whether a federal remedy was available.

¶ 25.    Appleton refers us to *Baldwin-United Corp. v. Garner*, 678 S.W.2d 754 (Ark. 1984). In *Garner*, the state court enjoined all persons and entities from making claims or commencing further actions other than in the Arkansas state district court. *See id.* at 755. The Arkansas Supreme Court upheld the injunction, based upon McCarran-Ferguson.[10] The general injunction was issued pursuant to statutes enacted to effectuate rehabilitation of insurance companies. *See id.* at 758.

¶ 26.    We do not find *Garner* instructive. It did not address the general rule discussed in *Donovan*, nor did it involve a federal court decision honoring a state injunction.

¶ 27.    Fundamentally, Appleton asks us to construe McCarran-Ferguson to forbid Home from pursuing a federal remedy in federal court. We conclude, however, that a state court may not deprive a

---

[9] *See, e.g., Davister Corp. v. United Republic Life Ins. Co.,* 152 F.3d 1277 (10th Cir. 1998); *Murff v. Professional Medical Ins. Co.,* 97 F.3d 289 (8th Cir. 1996); *Fragoso v. Lopez*, 991 F.2d 878 (1st Cir. 1993).

[10] *Garner's* plaintiff sought to litigate certain issues in bankruptcy court. *See Baldwin-United Corp. v. Garner*, 678 S.W.2d 754, 756 (Ark. 1984).

party from obtaining a determination in federal court of the application of a federal remedy. We decide that Home has a right to proceed in federal court to have the federal court determine the application of federal law to its petition to compel arbitration. It is this right that *Donovan* prohibits a state court from enjoining.[11]

¶ 28. In addition to the federal authority, our own decisions have recognized that

> when the courts of two sovereign entities both have jurisdiction to resolve litigation before them, the courts of one sovereign have no power to limit, modify or control the power of the other court to resolve litigation properly brought before it. Each court is free to render the judgments it is empowered to issue by the rules of the sovereign entity it serves. The jurisdiction first issuing its decision may do so without regard to the fact that this litigation is pending in courts of a separate sovereign.

*Teague v. Bad River Band of Chippewa Indians*, 229 Wis. 2d 581, 593, 599 N.W.2d 911 (Ct. App. 1999). The federal government is a separate sovereign. *See Ableman v. Booth*, 62 U.S. 506, 523 (1858). No one contests the federal court's jurisdiction. A Wisconsin court therefore may not limit or control the federal court's power to resolve the litigation before it. The

---

[11] We do not imply that a Wisconsin court may not issue an injunction under Wis. Stat. ch. 645 dealing with rehabilitation and liquidation of insurers. We do note, as a practical matter, that the injunction, if honored by other states, is honored on the grounds of comity. *See Isermann v. MBL Life Assur. Corp.*, 231 Wis. 2d 136, 149–52, ¶¶ 18–22, 605 N.W.2d 210 (Ct. App. 1999). If the injunction is honored by federal courts, it is honored on either the grounds of comity or because there is no available federal remedy. *See Munich Amer. Reinsur. Co. v. Crawford*, 141 F.3d 585, 595–96 (5th Cir. 1998).

injunction, however, by requiring Home to dismiss the federal action, attempts to deprive the federal court of its power to determine whether Home has a federal remedy under the FAA. The circuit court did not have the power to so affect another sovereign's courts.

¶ 29.  We reject Appleton's contention that the circuit court's inherent authority to enforce its order adopting the parties' stipulation authorized the court to enjoin Home from pursuing its federal action.[12] Wisconsin courts may sanction parties for failing to obey court orders. *See Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273–74, 470 N.W.2d 859 (1991). Under the Supremacy Clause and the general rule in *Donovan*, however, sanctions may not include enjoining a party from pursuing federal remedies in federal court.

¶ 30.  Home asserts that even if McCarran-Ferguson empowers a state court to enjoin a federal proceeding, "the essential elements of 'reverse preemption' are lacking." One such element is that the federal statute operates to "invalidate, impair, or supersede any [state] law . . . ."[13] *See Fabe*, 508 U.S. at 497 n.3.

---

[12] We take exception to and disapprove of Home's misrepresentation that it did not agree to litigate the issue of the number of deductibles and retrospective premiums applicable to the 3M litigation. The record is clear that Home agreed to litigate before the Outagamie County Circuit Court the very issues it now seeks to arbitrate.

[13] The McCarran-Ferguson Act provides that a state law may reverse preempt a federal statute if: (1) the federal statute does not specifically relate to the "business of insurance"; (2) the state law was enacted for the "purpose of regulating the business of insurance"; and (3) the federal statute operates to "invalidate, impair, or supersede" the state law. Home offered no argument on the first two elements, focusing solely on the interaction between the FAA and state statutes.

Home claims that applying the FAA to the agreements' arbitration clauses does not conflict with Wisconsin law regulating insurance. Specifically, it contends that (1) there is no factual basis upon which the court could determine if Wisconsin law applied; (2) statutory provisions regulating policies do not apply to the agreements because they are separate contracts from the insurance policies; and (3) WIS. STAT. § 631.85 does not invalidate the arbitration clauses.

¶ 31. The parties have extensively briefed these issues, and the federal court will necessarily address them in determining whether Home has an available federal remedy. That determination will involve interpreting Wisconsin statutes that have not yet been construed. As the Supreme Court recognized, "only state courts may authoritatively construe state statutes." *BMW of North America v. Gore*, 517 U.S. 559, 577 (1996). We therefore address the issues that concern the application of Wisconsin insurance law to the 1990 to 1993 policies and agreements.

¶ 32. We reject Home's various contentions that the deductible and retrospective premium agreements are not governed by the insurance laws of this state, and conclude that WIS. STAT. § 631.85 applies to invalidate the arbitration clauses. Those agreements, despite Home's protests, are part of the insurance policy, as defined by Wisconsin law.

¶ 33. First, the record supports application of Wisconsin insurance law to the Appleton-Home agreements. WISCONSIN STAT. § 631.01 provides in part: "This chapter and ch. 632 apply to all insurance policies . . . delivered or issued for delivery in this state, on property ordinarily located in this state . . . or on business operations in this state . . . ." Appleton's policies and agreements list its address as Appleton, Wisconsin.

The 1990 deductible agreement states that Appleton's "principal place of business [is located] at Appleton, Wisconsin." Appleton's affidavits also indicate that the 1990 to 1993 policies and agreements were issued for delivery in Wisconsin. The facts of record are sufficient to conclude that Wisconsin insurance law applies.

¶ 34.   We next reject Home's assertion that the agreements are separate contracts and not part of the insurance policies.[14] We are unpersuaded that provisions relating to an insurance contract's consideration are not part of the contract simply because they are set forth in discrete pieces of paper. Under Wisconsin law, an insurance policy includes "any document . . . used to prescribe in writing the terms of an insurance contract . . . ."[15] *See* WIS. STAT. § 600.03(35).

¶ 35.   The agreements prescribe in writing Appleton's premium obligations.[16] A premium is essential to

[14] We focus exclusively on the retrospective premium agreements. The policy, not the deductible agreement, governs how the deductible applies. Resolution of the question of how many deductibles apply to a given loss requires interpreting the policy itself without reference to the deductible agreement.

[15] Home would have us define "policy" as any document used to prescribe in writing the terms of the insurance afforded, thereby divorcing its obligations to the policyholder and third parties from the premium. The legislature, however, did not use Home's definition. We presume the legislature chose its terms carefully and with precision to express its meaning. *See John-son v. City of Edgerton*, 207 Wis. 2d 343, 351, 558 N.W.2d 653 (Ct. App. 1996).

[16] The retrospective premium agreements determine the amount of premium the insured pays. Each agreement provides: "The premiums for the Annual Term ("Annual Policy Premium") shall be paid in accordance with the terms of this Agreement, which *modifies and supercedes* the provision in the Policies regarding premium obligations." (Emphasis added.)

the contract of insurance. If the policy does not specify the premium and there is no basis for determining what is due, the contract is not complete. *See* 1 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 17:6, at 17–11, 17–12 (1997). Because the retrospective premium agreements provide the basis for determining the premium, they completed the insurance contracts. The premium is thus one of the terms of an insurance contract and because the agreements prescribe that term in writing, they are part of their respective policies.

¶ 36.    Home next contends that even if the agreements are part of the policies, they are not "forms" the insurance commissioner must approve under Wisconsin law. It asserts that the agreements were negotiated on an arm's length basis with a sophisticated insured and were not used on a widespread basis.[17] We are unpersuaded.

██

¶ 37.    WISCONSIN STAT. § 631.85 provides in part: "An insurance *policy* may contain provision for independent appraisal and compulsory arbitration, subject to the provisions of s. 631.20." (Emphasis added.) WISCONSIN STAT. § 631.20 in turn provides in part that "No form subject to s. 631.01 (1), except as exempted under s. 631.01 (2) to (5), may be used unless it has been filed with and approved by the commissioner and unless the insurer certifies that the form complies with chs. 600 to 655 and rules promulgated under chs. 600 to 655." Section 631.20 also provides various grounds upon which

---

[17] Home seems to suggest that insurance agreements with sophisticated insureds should not be subject to the same regulation as other insurance contracts. This argument is better addressed to the insurance commissioner, who can exempt certain classes of insurance from regulation, or to the legislature.

the commissioner may disapprove a form. It further directs us to WIS. STAT. § 631.01 to ascertain those forms subject to WIS. STAT. chs. 631 and 632, and provides certain exceptions to the requirement of obtaining commissioner approval.[18]

¶ 38. Home does not contend that the agreements fit within any of the WIS. STAT. § 631.01 exceptions. Rather, it asserts that the agreements are not "forms" as defined in WIS. STAT. § 600.03(21) because they are not a policy prepared for general use.[19] We disagree with the focus of Home's analysis.

¶ 39. Home would have us substitute the word "form" for "policy" in WIS. STAT. § 631.85. The legislature ascribed different meanings to the two words. "Policy" means "any document . . . used to prescribe in writing the terms of an insurance contract, including

---

[18] Those exceptions include:

    (a)  As provided in ss. 600.01 and 618.42;

    (b)  On business operations in this state if the contract is negotiated outside this state and if the operations in this state are incidental or subordinate to operations outside this state, unless the contract is for a policy of insurance to cover a warranty, as defined in s. 100.205 (1) (g), in which case the provisions set forth in sub. (4m) apply; and

    (c)  As otherwise provided in the statutes.

    . . . .

    (5)  OTHER EXCEPTIONS. The commissioner may by rule exempt any class of insurance contract or insurer from any or all of the provisions of this chapter and ch. 632 if the interests of Wisconsin insureds or creditors or of the public of this state do not require such regulation.

WIS. STAT. § 631.01(1).

[19] For purposes of our discussion only, we assume that the various side agreements were not prepared for general use and were therefore not "forms." The circuit court made no findings on this issue, and the record is inadequate for us to make any such determination.

endorsements and riders and service contracts issued by motor clubs." WIS. STAT. § 600.03(35). "Form" includes only those policies and applications "prepared for general use and does not include one specially prepared for use in an individual case." WIS. STAT. § 600.03(21). We presume the legislature chose its terms carefully and with precision to express its meaning. *See Johnson v. City of Edgerton*, 207 Wis. 2d 343, 351, 558 N.W.2d 653 (Ct. App. 1996).

¶ 40. WISCONSIN STAT. § 631.85 requires the insurance commissioner's approval of mandatory arbitration provisions in a policy. It does not contain a procedure for obtaining that approval, but instead directs us to the provisions of WIS. STAT. § 631.20 for that process. Thus, although § 631.20 generally refers to forms, the legislature intended it to provide the procedure for approval of mandatory arbitration provisions in insurance policies.

¶ 41. Home next contends that the application of WIS. STAT. § 631.85 does not per se invalidate arbitration clauses not approved by the commissioner. Home claims that the statutes provide for public and private remedies and nowhere indicate that a provision not approved by the commissioner is to be stricken. We disagree.

¶ 42. WISCONSIN STAT. § 631.15(3m) states: "A policy that violates a statute or rule is enforceable against the insurer as if it conformed to the statute or rule." WISCONSIN STAT. § 631.85 provides that a policy may contain provisions for mandatory arbitration subject to commissioner approval. Section 631.15(3m) requires that the policy must conform to § 631.85. That is accomplished here by, in effect, removing the arbitration provision that Home failed to obtain approval

for. The policy is therefore enforceable as though the arbitration provision did not exist.

¶ 43.　Home next asserts that the 1990 and 1993 agreements call for the application of New York law and that Wisconsin courts generally enforce choice of law clauses. It also contends that Wisconsin courts strive to give effect to all provisions of a contract and to interpret them consistently with one another. Therefore, Home claims, we should apply New York law to the arbitration provisions. We are unpersuaded.

¶ 44.　The general rule governing choice of law clauses in insurance contracts is:

> A provision that a contract of insurance shall be governed by the law of a given state is void where such an express provision violates a statute of the state of the contract or would, if given force, evade statutory provisions declaring a rule of public policy with reference to contracts made within the jurisdiction, or where the contract stipulation would violate the interests and public policy of the state, since these cannot be changed by the contract of the parties.

2 COUCH, *supra*, § 24.23, at 24–39 to 40 (footnotes omitted); *see also Terry v. Mongin Ins. Agency,* 102 Wis. 2d 239, 241–42, 306 N.W.2d 270 (Ct. App. 1981) (statutory provisions respecting the terms of insurance policies may not be abrogated by agreement). Under New York law, the arbitration provisions would be enforced. *See* N.Y. C.P.L.R. § 7501 (McKinney 1999).[20] Our statutes,

---

[20] N.Y. C.P.L.R. § 7501 provides in part:

A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award.

however, evince Wisconsin's public policy that the insurance commissioner approve mandatory arbitration clauses in insurance policies. Thus, applying New York law violates Wisconsin's public policy concerning arbitration clauses in insurance policies. We therefore decline to enforce the choice-of-law provision.

¶ 45. Home also contends that the arbitration provisions are enforceable under Wisconsin law because Wisconsin has a strong policy of favoring arbitration. That policy, however, does not apply to insurance policies, as evidenced by the plain language of WIS. STAT. § 631.85. The legislature pronounced this state's public policy when it subjected mandatory arbitration provisions in insurance policies to insurance commissioner approval. *See Flynn v. DOA*, 216 Wis. 2d 521, 539, 576 N.W.2d 245 (1998). Indeed, WIS. STAT. § 600.01 acknowledges that "[c]hapters 600 to 655 restrict otherwise legitimate business activity . . . ."

¶ 46. Finally, Home maintains that there are only four reasons recognized under Wisconsin law for not enforcing arbitration provisions, and insurance commissioner approval is not one of those reasons.[21]

---

[21] In *Maryland Cas. Co. v. Seidenspinner*, 181 Wis. 2d 950, 956, 512 N.W.2d 186 (Ct. App. 1994), we said:

> There are four situations where the court will not enforce the contractual terms and will enjoin arbitration: (1) [w]here fraud or duress renders the agreement voidable; (2) where there is no *bona fide* dispute; (3) where the performance which is the subject of the demand for arbitration is prohibited by statute; and (4) where a condition precedent to arbitration has not been fulfilled.

We did not address the application of WIS. STAT. § 631.85 in *Maryland*. Moreover, it was the policyholder, not the insurer, who invoked the arbitration provision to arbitrate a coverage dispute. *See id.* at 954. That is permissible under WIS. STAT. § 631.15(1), even if the insurance commissioner had not approved the arbitration provision.

We reject this argument for the same reasons we rejected Home's contention that Wisconsin's strong policy favoring arbitration controls. That policy and the enumerated reasons fail in the face of the express legislative intent set forth in WIS. STAT. § 631.85.

## CONCLUSION

¶ 47. We hold that the circuit court may not enjoin Home from presenting to a federal court the question of the application of a federal remedy. Wisconsin courts have no power to limit, modify, or control the power of federal courts, including enjoining a litigant from pursuing remedies in that court. Because we determine that the circuit court may not enjoin Home from pursuing a determination in federal court of the applicability of federal law, the injunction should not have issued. Accordingly, the order is reversed.

¶ 48. Because of the potential application of McCarran-Ferguson to this case, the federal court will necessarily have to determine the application of Wisconsin laws regulating the business of insurance to the arbitration clause. We therefore have considered and reject Home's various contentions that the 1990 to 1993 deductible and retrospective premium agreements are not governed by this state's insurance laws and conclude that WIS. STAT. § 631.85 applies to invalidate the agreements' arbitration clauses. Those agreements, despite Home's protests, are part of the insurance policy as defined by Wisconsin law.

*By the Court.*—Order reversed.