*292 OPINION OF THE COURT
Edward H. Lehner, J.
The basic issue presented on this motion by Gallon Petroleum Company for renewal and reargument is whether this court is bound by the Fifth Circuit Court of Appeals holding that Gallon has a valid and liquidated claim against Frontier Insurance Company in the amount of $2,700,000. The resolution of this question turns on whether, in light of the provisions of the Mc-Carran-Ferguson Act (15 USC § 1011 et seq.), a Louisiana Federal District Court had jurisdiction to render judgment against Frontier when this rehabilitation proceeding had been commenced prior to the decision awarding judgment, and whether this court is required to give full faith and credit to the Fifth Circuit’s determination that the District Court had such jurisdiction.
In May 2001 judicial proceedings were instigated by Gallon against Frontier in the United States District Court, Eastern District of Louisiana, on allegations that Frontier, as surety, was liable for the payment of $2,700,000 on a bond it had issued to Gallon in connection with that company’s obligation to plug and abandon certain oil and gas wells it owned. On August 17, 2001, Gallon filed a motion for summary judgment with the District Court which was returnable on September 5. On August 27, this delinquency proceeding against Frontier was commenced when the New York State Superintendent of Insurance filed an ex parte application with this court containing an order to show cause which I signed appointing the Superintendent as temporary rehabilitator.[1] Despite the commencement of this proceeding, the District Court rendered a decision on September 6, 2001 directing entry of judgment in the amount of $2,700,000 in favor of Gallon.[2]
On October 10, 2001 an order was issued in this court appointing the Superintendent as rehabilitator of Frontier and enjoining, inter alia, all persons “from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier or the *293 Superintendent as Rehabilitator . . . [and] from obtaining preferences, judgments, attachments or other hens or making any levy against Frontier’s assets or any part thereof.”
On September 2, 2002, on the application of Gallon, an order was issued directing the Superintendent to show cause why I should not fix Gallon’s claim in this proceeding as liquidated in the amount of $2,700,000. Subsequently thereto, but prior to the argument of Gallon’s motion, the Superintendent moved in November 2002 in the District Court pursuant to Federal Rules of Civil Procedure rule 60 (b) to vacate the judgment theretofore entered against Frontier. On December 11, 2002 the District Court denied the motion (Callon Petroleum Co. v Frontier Ins. Co., 2002 WL 31819127, *1, 2002 US Dist LEXIS 24028, *4 [ED La, Dec. 11, 2002]), noting that said rule “is usually interpreted narrowly, affording relief from final judgments only in the most specific circumstances,” and that the Fifth Circuit “generally looks to two factors to determine whether the judgment is void: whether the rendering court lacked subject matter jurisdiction or personal jurisdiction, or whether the judgment was inconsistent with due process of law.” The court held that the prosecution of the Louisiana action was not barred by the order as it “did not constitute the transaction of Frontier’s business as contemplated by the Order” (2002 WL 31819127, *2, 2002 US Dist LEXIS 24028, *5) and that under the language thereof, the Superintendent could have authorized opposition to the motion be filed on behalf of Frontier.
On December 20, 2002 the parties orally argued before me Gallon’s aforesaid motion. In discussing the terms of the order, it was apparent that while it stayed attorneys who had appeared for Frontier from being present in the District Court on September 5 to oppose Gallon’s summary judgment motion, by its terms it did not stay Gallon from proceeding on its motion against Frontier (see, transcript, Dec. 20, 2002, at 34-35). By order dated January 31, 2003, I denied Gallon’s motion, concluding that the entry of judgment at a time when Frontier’s attorneys were barred from being present in court to oppose the motion was not consistent with due process, and that being placed in a position of having to vacate a judgment under rule 60 (b), as interpreted by the District Court, is “vastly different from that of having to initially defend a summary judgment motion.”
The Superintendent then retained new attorneys and appealed the District Court’s order. By decision dated December 3, *294 2003, the Fifth Circuit affirmed (351 F3d 204 [2003]), holding that “the judgment was not void” and that the “crux of our reasoning ... is simply that the Superintendent offers no plausible excuse for ignoring the judgment for some fourteen months” (at 206). In response to the Superintendent’s contention that jurisdiction over Gallon’s claim vested exclusively in this court, the Fifth Circuit held that “because federal courts regulate the scope of their own jurisdiction, a Rule 60(b)(4) challenge to jurisdiction should be sustained only where there is a ‘clear usurpation of power,’ ” or the jurisdictional error is “egregious,” and that “the jurisdictional error, if any, in entering judgment after the Order to Show Cause does not appear to be ‘egregious’ ” (at 208).
Regarding the act, the court noted that federal courts normally avoid interfering with state rehabilitation proceedings, exercising abstention in the manner referred to in Burford v Sun Oil Co. (319 US 315 [1943]). Significantly, for the purpose of this motion, the court stated (at 209): “We can certainly agree that, had the Superintendent timely moved the district court to dismiss or stay this action on Burford grounds, it would have been proper, if not obligatory, for the district court to have done so.” However, the court concluded that because the District Court had diversity jurisdiction it was “not automatically stripped of subject matter jurisdiction over claims asserted against an insurer undergoing state insolvency or rehabilitation proceedings” (at 209).
Now before me is Gallon’s motion for reargument and renewal of my order dated January 31, 2003.[3] Regarding the binding effect of the Fifth Circuit’s decision, it is initially noted that article IV, § 1, of the United States Constitution does not obligate a state court to give full faith and credit to decisions of a federal court as the section only refers to “judicial proceedings of every other State.” However, 28 USC § 1738 provides that “judicial proceedings . . . shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.” While even this statute does not specifically refer to decisions of federal courts, it has been interpreted to require state courts to give such recognition to decisions of federal courts. (See, Siegel, NY Prac § 471 [3d ed]; Supreme Lodge, K. P. v Meyer, 265 US 30, 33 [1924]; Dela *295 ware Val. Citizens’ Council for Clean Air v Commonwealth of Pa., 755 F2d 38, 43 [3d Cir 1985]; Americana Fabrics, Inc. v L & L Textiles, Inc., 754 F2d 1524, 1529 [9th Cir 1985].)
In 1939 the Uniform Insurers Liquidation Act (UILA) was adopted by the National Conference of Commissioners on Uniform State Laws and was enacted in New York in 1940 (now Insurance Law §§ 7408-7415). The law has also been adopted in Louisiana (La Rev Stat Ann, tit 22, § 757 et seq.). The statute defines a “delinquency proceeding” as one instituted “for the purpose of liquidating, rehabilitating, reorganizing, or conserving” an insurer (§ 7408 [b] [2]), and is commenced “by an application to the supreme court ... for an order directing such insurer to show cause why the superintendent should not have the requested relief’ (§ 7417). Thus, this delinquency proceeding was commenced on August 27, 2001 when I signed the order. The goal of the statute is “to make uniform the laws of those states that enact it” (§ 7415), “with the main purpose in mind of providing a uniform system for the orderly and equitable administration of the assets and liabilities of defunct multistate insurers” (Murphy Co. v Reserve Ins. Co., 54 NY2d 69, 77 [1981]). “[W]e believe that, whatever the nature of the claim asserted, absent the appointment of an ancillary receiver, the [UILA] requires that the claimant prove his claim in the domiciliary liquidation proceedings” (id. at 80).
Regarding this proceeding, claimants residing in states that have adopted the Uniform Insurers Liquidation Act are required to file claims in this New York proceeding unless an ancillary receiver has been appointed in the state of the claimant’s residence (§ 7411). Here no ancillary proceeding has been commenced in Louisiana.
In Matter of Knickerbocker Agency (Holz) (4 NY2d 245 [1958]), it was stated that the “Supreme Court, in the liquidation proceeding, must take cognizance of the interests of the policyholders, creditors, stockholders, and the public,” citing what is now Insurance Law § 7417, as upon the commencement of such proceeding “the rights of creditors, indeed, the interests of policyholders, stockholders and the public, intervened” (at 250-251). The Court went on to say that the Supreme Court, “with the agency of the Superintendent of Insurance, was intended to have exclusive jurisdiction of claims both for and against an insurance company in liquidation . . . [and] other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation” (at 250, *296 252; see also, Corcoran v Hall & Co., 149 AD2d 165, 173 [1st Dept 1989]).
With respect to the regulation of the insurance industry, the McCarran-Ferguson Act (15 USC § 1012 [b]) provides that: “No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance.” The statute was designed to “restore the supremacy of the States in the realm of insurance regulation” (United States Dept, of Treasury v Fabe, 508 US 491, 500 [1993]). In that case, the Court held that to the extent an Ohio insurance liquidation statute “serves to ensure that, if possible, policyholders ultimately will receive payment on their claims,” it regulates “the business of insurance” (at 506). The Court pointed out the unusual effect of the act, stating (at 507):
“it transformed the legal landscape by overturning the normal rules of pre-emption. Ordinarily, a federal law supersedes any inconsistent state law.
The first clause of § 2(b) reverses this by imposing what is, in effect, a clear-statement rule, a rule that state laws enacted ‘for the purpose of regulating the business of insurance’ do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise.”
While the District Court recognized that it had rendered a direction for judgment after the order was signed and thus subsequent to the institution of this New York “delinquency proceeding,” and the Fifth Circuit stated (351 F3d at 209) that if the Superintendent had made a timely application, “it would have been proper, if not obligatory,” for the District Court to have dismissed or stayed Gallon’s action against Frontier, the appeals court specifically rejected the contention that the District Court lacked jurisdiction to render the judgment, maintaining that it retained diversity jurisdiction. The court stated (at 209 n 8) that only “[o]ne federal court has given traction to the Superintendent’s argument that the New York rehabilitation proceedings left the District Court without jurisdiction to rule on Gallon’s summary judgment motion,” that being the court in Insurance Affiliates, Inc. v O’Connor (522 F Supp 703 [D Colo 1981]). There the court held that the Uniform Insurers Liquidation Act, as adopted in Colorado, required that the plaintiffs claim be heard in Illinois where the affected insurer’s liquidation proceeding was pending, and thus divested *297 the Federal District Court of its jurisdiction based on diversity. A similar conclusion was subsequently reached this year by the District Court in Nebraska in In re Amwest Sur Ins. Co. (2004 WL 628217, *2, 2004 US Dist LEXIS 5245, *5 [D Neb, Mar. 30, 2004]), where it was held that “[b]ecause the federal diversity jurisdiction statute does not relate specifically to the business of insurance and because Nebraska has enacted a comprehensive statutory scheme to regulate the business of insurance,” the act bars the federal court from hearing the matter based on diversity.
Also, in 1993 the District Court in Arizona in U.S. Fin. Corp. v Warfield (839 F Supp 684, 689 [1993]), although it conceded that it was “somewhat hesitant to conclude that state law and a state court injunction divest this court of jurisdiction,” determined that because the act applied to the subject claim, it lacked jurisdiction to hear the matter as to do so “clearly would impair the Arizona laws which grant exclusive jurisdiction over claims against insolvent insurers to Arizona’s superior courts” (at 689 n 3). A similar conclusion was reached by the District Court in Covington v Sun Life of Canada (U.S.) Holdings, Inc. (2000 WL 33964592, 2000 US Dist LEXIS 20902 [SD Ohio, May 17, 2000]).
In Baldwin-United Corp. v Gamer (283 Ark 385, 678 SW2d 754 [1984]), the Arkansas Supreme Court enjoined claims against subsidiaries of an insurance company undergoing state rehabilitation, holding that the purpose of the act
“was to preserve intact from any federal intrusion, existing and future state regulation of the insurance industry subject only to the exceptions expressly provided . . . [and since] the Bankruptcy Act does not specifically relate to the business of insurance . . . appellants cannot pursue their claims under the Bankruptcy Act once enjoined by a valid state injunction” (283 Ark at 392-393, 678 SW2d at 757-758).
The court concluded that if “any meaning is to be given to the . . . mandate of the . . . Act, it must be that the determination of rights among an insurance company’s creditors must be left to state proceedings” (283 Ark at 393, 678 SW2d at 758; see also, Superintendent of Ins. of State of N.Y. v International Equip. Leasing, Inc., 247 NJ Super 119, 588 A2d 883 [1991]).
Other federal courts have held that while the act did not deprive them of diversity jurisdiction, in insurance insolvency *298 matters it was proper, under the Burford abstention doctrine,[4] to decline jurisdiction. For example, in Grimes v Crown Life Ins. Co. (857 F2d 699, 703 [1988], cert denied 489 US 1096 [1989]), the Tenth Circuit wrote:
“The McCarran-Ferguson Act thus becomes relevant to this case, not because it removes diversity jurisdiction from the federal courts in insurance matters, but because it encourages the states to formulate their own systems to regulate insurers doing business in their states. Therefore, in instances where states have responded to this congressional policy by formulating complex and specialized administrative and judicial schemes to regulate insurers, especially the liquidation of insolvent insurers, it becomes increasingly possible that the exercise by a federal court of its jurisdiction will prove to be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.” (Internal quotation marks omitted; see also, AMS Mktg., Inc. v Fidelity Sec. Life Ins. Co., 830 F Supp 1284, 1287 [D Ariz 1993] [“The handling of the affairs of insolvent insurance companies is generally the responsibility of the states and federal courts have been reluctant to interfere in state receivership proceedings”]; Law Enforcement Ins. Co., Ltd. v Corcoran, 807 F2d 38, 44 [2d Cir 1986] [“the structure of the New York system serves the state’s strong interest in centralizing claims against an insolvent insurer into a single forum where they can be efficiently and consistently disposed of’]; Martin Ins. Agency, Inc. v Prudential Reins. Co., 910 F2d 249 [5th Cir 1990]; Commissioner of Ins. of Mich, v DMB Kyoto Plaza *299 Shopping Ctr., L.L.C., 42 F Supp 2d 726 [WD Mich 1998].)
Other federal courts, without clearly specifying whether they are acting based on Burford abstention principles and/or lack of jurisdiction, have remanded matters to state courts so as to conform with state statutory provisions mandating that all proceedings in an insurance delinquency proceeding be consolidated in one court. (See, Davister Corp. v United Republic Life Ins. Co., 152 F3d 1277 [10th Cir 1998]; Munich Am. Reins. Co. v Crawford, 141 F3d 585 [5th Cir 1998]; Corcoran v Universal Reins. Corp., 713 F Supp 77 [SD NY 1989].)
In his papers the Superintendent argues, on various grounds, that the Fifth Circuit decision was erroneous. This court, of course, is not in a position to review the merits of that decision. While the Fifth Circuit indicated that had the Superintendent moved timely it would have been appropriate to dismiss or stay Gallon’s claim, it clearly indicated such action would not be premised on a lack of jurisdiction although, as set forth above, several federal courts have held that they are divested of jurisdiction once a delinquency proceeding is instituted.
Although there is a conflict in the case law as to the theory under which a claim against an insurer involved in a delinquency proceeding is to be referred to a state court, it is clear by virtue of the provisions of the act and the Uniform Insurers Liquidation Act that once such proceeding is commenced in a state that has adopted the Uniform Insurers Liquidation Act, such a claim is to be referred to the court supervising the proceeding. The difficult roadblock presented here in achieving such result is the holding of the Fifth Circuit, the “crux” of which that court stated was the 14-month delay of the Superintendent in moving to vacate the District Court judgment.
If Gallon’s present motion before me is granted, that would cause a claim of $2,700,000, that has never been adjudicated on the merits, to be honored by the Superintendent. If the Superintendent succeeds in rehabilitating Frontier, then no other party would appear to be adversely affected and Gallon may well have a liquidated claim against Frontier. However, if, as unfortunately occurs in the overwhelming majority of rehabilitation efforts, it is necessary to liquidate Frontier, then creditors, policyholders and other interested parties could be adversely affected by such a ruling. Since the public policy behind the enactment of the Uniform Insurers Liquidation Act mandates that claims against the insurer be handled in a *300 uniform and consistent manner, directing that the Gallon claim be allowed without consideration of the merits because of the Superintendent’s delay would not be in accord with such policy.
In light of the provisions of the act, I find that, solely for the present purposes of this proceeding, I need not grant full faith and credit to the Fifth Circuit holding as the requirement for full faith and credit emanates from an act of Congress (28 USC § 1738), which act does not specifically relate “to the business of insurance.” The theory behind this conclusion is consistent with that employed by courts cited above who found that they lacked jurisdiction over litigation involving an insolvent insurer when the sole basis thereof was the federal diversity statute, which statute also did not “specifically relate to the business of insurance.” This, as aforesaid, is not to say that the Fifth Circuit determination would not be binding on Frontier should it be successfully rehabilitated.
Accordingly, the motion of Gallon is granted solely to the extent of granting renewal, but thereupon, for the reasons aforesaid, I adhere to my prior determination denying its motion.

. The order mandated that pending the hearing of the motion “Frontier, its officers, directors, shareholders, members, trustees, agents, servants, employees, policyholders, attorneys, managers, and all other persons are restrained from the transaction of its business or the waste or disposition of its property, except as authorized by the Superintendent.”

. Frontier concedes that its attorneys did not file papers in opposition to Gallon’s motion for summary judgment, but instead filed a copy of the order with the District Court on September 4, 2001, one day before the motion for summary judgment was heard by that court.

. In 2003, this rehabilitation proceeding was transferred to the Supreme Court in Sullivan County, which is the location of Frontier’s main office.

. In Burford v Sun Oil Co. (supra), federal courts were advised to decline to exercise jurisdiction in certain matters involving essentially local issues arising out of a complicated state regulatory scheme. In an exhaustive discussion of the abstention doctrine, in Quackenbush v Allstate Ins. Co. (517 US 706 [1996]), the Supreme Court stated that “Burford allows a federal court to dismiss a case ... if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern . . .” (at 726-727 [internal quotation marks omitted]). It noted that the “cases do not provide a formulaic test for determining when dismissal under Burford is appropriate . . . [but] [ultimately, what is at stake is a federal court’s decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the independence of state action” (at 727-728 [internal quotation marks omitted]).