Scott BRUNSON, Plaintiff-Appellant,

v.

Robert L. WARD, Debra Czaplewski, State Farm
Mutual and Continental Casualty Company,
Defendants,

PROGRESSIVE NORTHERN INSURANCE COMPANY,
Defendant-Respondent.

Supreme Court

*Nos. 98–3002, 98–3300. Oral argument January 4,
2001.—Decided July 6, 2001.*

2001 WI 89

(Also reported in 629 N.W.2d 140.)

For the plaintiff-appellant there were briefs (in the court of appeals) by *Lynne A. Layber*, Milwaukee, and oral argument by *Lynn A. Layber*.

For the defendant-respondent there was a brief by *Rick E. Hills, Michelle M. Stoeck* and *Hills & Hicks, S.C.*, Brookfield, and oral argument by *Rick E. Hills*.

¶ 1. DIANE S. SYKES, J. In Wisconsin, under-insured motorist policies written in the amount of $25,000 have been held to be illusory contracts, and case law has required insurers to pay damages, up to the $25,000 limit of any such policy, as a remedy for the issuance of an illusory contract. *Meyer v. Classified Ins. Co.*, 192 Wis. 2d 463, 468, 531 N.W.2d 416 (Ct. App. 1995); *see also Kaun v. Indust. Fire & Cas. Ins. Co.*, 148 Wis. 2d 662, 670, 436 N.W.2d 321 (1989); *Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 270–71, 500 N.W.2d 354 (Ct. App. 1993). The question in this case is the continued viability of this judicially-created remedy in light of a subsequent legislative one—a statute requiring underinsured motorist (UIM) policies to provide at least $50,000 in coverage—where the policy in question contains a clause conforming the policy to the requirements of state statute.

¶ 2. More specifically, the court of appeals in this case certified the following question to this court: "Does

the remedy in *Meyer v. Classified Insurance Co.*, 192 Wis. 2d 463, 531 N.W.2d 416 (Ct. App. 1995), prohibiting illusory insurance coverage, still hold where an insurer fails to update its underinsured motorist (UIM) insurance coverage pursuant to Wis. Stat. § 632.32(4m) (1995–96),[1] but has included a provision stating that the policy shall conform to the Wisconsin Statutes?" We answer the certified question no, and therefore affirm the circuit court's dismissal of the UIM insurer from this case. However, we reverse the circuit court's award of costs and attorney's fees against the plaintiff on his motion for reconsideration, which the circuit court considered to be frivolous.

I

¶ 3. Plaintiff Scott Brunson was seriously injured in an automobile accident in January 1996. The other driver, defendant Robert Ward, had $100,000 in automobile liability coverage, and his insurer offered full policy limits to Brunson.

¶ 4. Brunson had UIM insurance through his automobile liability insurer, Progressive Northern Insurance Company (Progressive), which he purchased on November 19, 1995, for a premium of $23. The declarations page of the policy stated that it provided UIM coverage in the amount of $25,000 per person and $50,000 per accident. The policy provided that Progressive would pay "damages. . .which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** up to the limit of liability as defined in this Endorsement . . ." and defined an "underinsured motor vehicle" as

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

a motor vehicle that is an insured motor vehicle but for which the sum of the limits under all liability bonds, insurance, policies and cash deposits applicable at the time of the accident is less than the applicable limits of liability for **underinsured motorists coverage** under this endorsement.

¶ 5. Prior to Brunson's purchase of UIM coverage from Progressive, several appellate decisions had concluded that $25,000 UIM policies were illusory because of their interaction with Wis. Stat. § 344.33(2), which requires all Wisconsin drivers to carry at least $25,000 of liability coverage. *See Kaun*, 148 Wis. 2d at 670; *Meyer*, 192 Wis. 2d at 468; *Hoglund*, 176 Wis. 2d at 270–71. Because UIM coverage is payable only when the tortfeasor's liability limits are less than the insured's UIM limits, the statute requiring Wisconsin drivers to carry a minimum of $25,000 of liability coverage operated to render a $25,000 UIM policy illusory, since under these circumstances the insurer would never have to pay UIM benefits.

¶ 6. In *Meyer*, the court of appeals established a remedy for an insurer's issuance of this type of illusory UIM policy, requiring the insurer to compensate the insured for damages not covered by the third-party liability policy up to the $25,000 limit of the UIM policy. *Meyer*, 192 Wis. 2d at 468. Subsequent to *Meyer*, but before Brunson purchased his UIM coverage from Progressive, the Wisconsin legislature enacted 1995 Wis. Act 21. The act eliminated the illusory contract problem identified in *Kaun* and *Hoglund*, and remedied in *Meyer*, by creating Wis. Stat. § 632.32(4m)(d), requiring all UIM policies to provide a minimum of $50,000 coverage per person and $100,000 per accident.[2] The statute provides:

---

[2] UIM insurance coverage remains optional, however.

If an insured [on a policy that goes into effect after October 1, 1995] accepts underinsured motorist coverage, *the insurer shall include the coverage under the policy just delivered to the insured in limits of at least $50,000 per person and $100,000 per accident.* For any insured who accepts the coverage after notification [on a policy in effect on October 1, 1995], *the insurer shall include the coverage under the renewed policy in limits of at least $50,000 per person and $100,000 per accident.*

Wis. Stat. § 632.32(4m)(d) (emphasis added).

¶ 7. Because it was issued after the effective date of this change in the law, Brunson's policy was required to provide at least $50,000 of UIM coverage. On June 25, 1996, Progressive notified Brunson by letter that although the declarations page of the policy specified $25,000 of UIM coverage, the policy actually provided $50,000 of UIM coverage because it was required to do so by state law. The letter also explained that Ward was not "underinsured" as defined in the policy, because his $100,000 liability limits exceeded Brunson's $50,000 UIM limits. Accordingly, Progressive declined to pay UIM benefits.

¶ 8. On June 6, 1997, Brunson filed a negligence action against Ward. Brunson amended his complaint three times, eventually adding a UIM claim against Progressive. Progressive sought a declaratory judgment, asking the circuit court to: (1) reform the policy to comply with the requirement in Wis. Stat. § 632.32(4m)(d) of $50,000 in UIM coverage, and (2) dismiss it from the suit because Ward was not "underinsured" according to the policy definition. Brunson opposed the motion, arguing that the policy was illusory pursuant to *Hoglund,* and therefore he was entitled to the *Meyer* remedy of $25,000.

¶ 9. The Waukesha County Circuit Court, the Honorable James R. Kieffer, rejected Brunson's arguments and granted Progressive's motion. The circuit court reformed the UIM policy to provide the statutory minimum of $50,000 of UIM coverage, and concluded that it was not illusory at this level of coverage. The circuit court also held that Ward was not an underinsured motorist as defined by the policy and dismissed Progressive from the suit.

¶ 10. Subsequently, Progressive notified the Office of the Commissioner of Insurance (OCI) by letter that the declarations page issued to Brunson mistakenly stated that he had $25,000 of UIM coverage instead of the statutorily required $50,000. Based upon this letter, Brunson moved the court pursuant to Wis. Stat. § 806.07(1)(h)[3] to reconsider its reformation of the policy, arguing that the policy could not be reformed on the basis of Progressive's unilateral mistake and that this issue had not been briefed before the circuit court's ruling. Progressive opposed the motion, contending it was frivolous and requesting costs and reasonable attorney's fees. *See* Wis. Stat. § 814.025(1). The circuit court denied Brunson's motion for reconsideration, agreed with Progressive that it was frivolous, and awarded Progressive $1,395.75 in costs and attorney's fees.

¶ 11. Brunson appealed from both the declaratory judgment and the denial of his motion for reconsideration and the award of costs and attorney's fees against him. The appeals were consolidated. The court of appeals certified the case to this court to con-

---

[3] Wisconsin Statute § 806.07(1)(h) permits a motion for reconsideration upon a showing of "any other reason justifying relief from the operation of the judgment."

sider the status of *Meyer* in light of the enactment of Wis. Stat. § 632.32(4m)(d).

## II

¶ 12. This case involves the interpretation of an insurance contract, which is a question of law that the court reviews de novo. *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212, 341 N.W.2d 689 (1984). We construe an insurance policy to give effect to the intent of the parties, as expressed in the language of the policy. *Stanhope v. Brown County*, 90 Wis. 2d 823, 848, 280 N.W.2d 711 (1979); *Garriguenc v. Love*, 67 Wis. 2d 130, 134, 226 N.W.2d 414 (1975). If the policy language is unambiguous, we apply it as written. However, if the words of the policy are reasonably or fairly susceptible to more than one construction, it is ambiguous and we construe such ambiguities against the insurer. *Id.* at 135.

## III

¶ 13. To resolve the certified question of the applicability of the *Meyer* remedy, we must first decide whether Progressive's policy should have been reformed to reflect the statutorily required $50,000 of UIM coverage instead of $25,000. If reformation was proper, the policy is not illusory and the *Meyer* remedy does not come into play.

¶ 14. Progressive's policy provides that any of its terms that conflict with state statute are conformed to the requirements of state statute. The insurance code itself also requires that any policy that violates state statute or rule be conformed to the requirements of the statutes and rules. *See* Wis. Stat. § 631.15(3m).

¶ 15. Progressive's policy accounts for the possibility that certain of its provisions might conflict with state statute, and the insurer agrees in any such instance to be bound by the requirements of statute (it could hardly do otherwise), even though it has not charged or received a premium for the statutorily required benefits. Specifically, the policy provides that "[t]erms of this policy which are in conflict with the statutes of the state in which this policy is issued are hereby amended to conform to the statutes." This language is clear and unambiguous. By operation of this "conformance to law" clause, the endorsement specifying $25,000 of UIM coverage was automatically amended to provide the higher level of UIM coverage—$50,000—required by Wis. Stat. § 632.32(4m)(d).

¶ 16. Upgrading the policy to the higher level of coverage was appropriate for reasons separate and apart from the "conformance to law" clause in the policy. The insurance code provides that insurance policy provisions inconsistent with insurance statutes or rules are enforceable to the extent of the requirements contained in the statutes and rules. Specifically, Wis. Stat. § 631.15(3m) provides that "[a] policy that violates a statute or rule is enforceable against the insurer as if it conformed to the statute or rule." Here, the policy violated the minimum UIM coverage requirements contained in Wis. Stat. § 632.32(4m)(d), and, by virtue of Wis. Stat. § 631.15(3m), is enforceable against Progressive as if it conformed to the statutorily required $50,000 in UIM coverage.

■

¶ 17. The circuit court's "reformation" of the policy, therefore, was not so much a reformation at common law as a recognition that, pursuant to Wis. Stat. §§ 631.15(3m) and 632.32(4m)(d), as well as the

agreement of the parties embodied in the "conformance to law" provision, the terms of the policy were automatically amended to provide the $50,000 in UIM coverage required by statute, even though the insurer had not received a premium for that amount of coverage. Thus, in light of the legislature's enactment of the $50,000 UIM minimum, apparently as a response to the $25,000 UIM illusory contract problem, the judicially created remedy in *Meyer* is obviated and has no application here.

¶ 18. Wisconsin Statute § 631.15(3m) has been applied in two appellate cases, with divergent results. *See Appleton Papers, Inc. v. Home Indem. Co.*, 2000 WI App 104, 235 Wis. 2d 39, 612 N.W.2d 760; *Wis. Patients Comp. Fund v. St. Mary's Hosp. of Milwaukee*, 209 Wis. 2d 17, 561 N.W.2d 797 (Ct. App. 1997). *Appleton Papers* involved liability policies that contained mandatory arbitration clauses that had not been approved by the insurance commissioner, despite a requirement in Wis. Stat. § 631.85 that any such clauses must receive insurance commissioner approval. 2000 WI App 104, ¶¶ 6–8, 40–41. The court of appeals concluded that Wis. Stat. § 631.15(3m) required it to strike the non-conforming arbitration provisions and enforce the policies as though the arbitration provisions did not exist. *Id.* at ¶ 42.

¶ 19. *St. Mary's* concerned a hospital's failure to comply with the requirements necessary to become a self-insurer under Wis. Stat. § 655.23 (1983–84), a prerequisite to obtaining reimbursement for excess payments from the Wisconsin Patients Compensation Fund. *St. Mary's*, 209 Wis. 2d at 30. The hospital argued that it should be entitled to payment because Wis. Stat. § 631.15(2) (1983–84), the predecessor to Wis. Stat. § 631.15(3m), automatically brought its

improper self-insurance scheme into conformance with Wis. Stat. § 655.23 and qualified it for secondary coverage from the fund. The court of appeals refused to apply the statute in this way, concluding that "[r]ather obviously. . .[Wis. Stat. § 631.15(2)] is part of the statutory structure in place to protect insureds in their contractual relationships with providers and insurers, not to excuse a provider's or insurer's noncompliance." *Id.* at 35.

¶ 20. Because of their conflicting results, these cases do not provide much guidance here. In one, the court of appeals invoked Wis. Stat. § 631.15(3m) to reform nonconforming policies, and in the other, the court declined to do so. In this case, Brunson would like us to use *St. Mary's* as authority for disregarding Wis. Stat. § 631.15(3m), Wis. Stat. § 632.32(4m)(d), and the "conformance to law" provision in Progressive's policy, in order to take advantage of a judicially created remedy that has been replaced by a legislative one. This we cannot do.

¶ 21. The most that can be said about the applicability of *St. Mary's* here is that it is distinguishable and therefore limited to its own facts insofar as its interpretation of Wis. Stat. § 631.15(3m) is concerned. The case did not involve a policy term that conflicted with statute (as in this case), but, rather, the wholesale failure of a self-insuring hospital to take the steps necessary to qualify as a self-insurer. That the court of appeals would not allow the hospital to use the statute to excuse its misconduct to its own benefit was not unusual under the circumstances. Here, by contrast, the application of the statute operates to the insurance company's detriment in that the policy is read to supply the higher level of coverage although no premium was paid for it. True, Brunson does not recover the *Meyer*

175

remedy, but this occurs not because of any conduct on the part of Progressive, but because the legislature effectively supplanted it with Wis. Stat. § 632.32(4m)(d).

¶ 22. *Appleton Papers* is closer to this case, at least to the extent that the case applied Wis. Stat. § 631.15(3m) to reconcile a conflicting policy term to the requirements of statute. In any event, the statute, by its plain and unambiguous language, requires that Progressive's policy be enforced against the insurer "as if it conformed" to the new statute, that is to say, as if it supplied the higher level of UIM coverage.

¶ 23. This case is analogous, although not perfectly so, to *Smith v. National Indemnity Co.*, 57 Wis. 2d 706, 710, 205 N.W.2d 365 (1973). In *Smith,* an insurer issued a policy providing $100,000 per person and $300,000 per accident to the named insured and $10,000 per person and $20,000 per accident to renters of the insured's vehicles. However, the omnibus coverage statute, Wis. Stat. § 204.30(3) (1969), required that automobile liability policies include a provision that the insured's coverage would apply to any other drivers. *Id.* Thus, although the policy provided only $10,000 coverage to renters, state statute required it to provide $100,000, the same level of coverage provided to the named insured. The court concluded:

> Contrary to its written terms, the policy by operation of law must be deemed to afford the renters protection to the extent of the higher limits. This view is not remaking the policy. We are aware the parties were not mistaken when they wrote the policy and it was written as they intended, but [the insurer] should know or be chargeable with knowledge of the effect of the omnibus coverage statute and that it cannot issue a policy in conflict there-

with. The terms required by the statute and which were left out of the policy must be read in although the increased liability is not reflected in the premium.

*Id.* at 714 (citations omitted).

¶ 24. We reach a similar conclusion here. Brunson and Progressive contracted for $25,000 of UIM insurance, and Brunson paid a premium for that amount of coverage. However, Wis. Stat. § 632.32(4m)(d), in effect at the time Brunson purchased his policy, required UIM coverage of at least $50,000. By operation of law, the higher level of coverage is "read in," even though it was not reflected in the premium paid. At this level of coverage, the policy is not illusory, and the remedy in *Meyer* is not applicable.

¶ 25. At either $25,000 or $50,000, Brunson's UIM coverage limits were less than Ward's $100,000 liability policy limits. Progressive's policy defined an underinsured motor vehicle as a vehicle insured for less than the UIM coverage limits in Progressive's policy. Since Ward's liability limits exceeded Brunson's UIM coverage limits, Ward was not an underinsured motorist under the policy. Therefore, UIM benefits were not recoverable, and Progressive was properly dismissed from this action.

IV

¶ 26. Although we agree with that portion of the circuit court's order which dismissed Progressive from this case, we do not agree with the award of costs and attorney's fees for the filing of a frivolous motion for

reconsideration under Wis. Stat. § 814.025(3)(b).[4] A finding of frivolousness is based upon an objective standard: whether the attorney knew or should have known that the position taken was frivolous, as determined by what a reasonable attorney would have or should have known under the same or similar circumstances. *Sommer v. Carr*, 99 Wis. 2d 789, 799, 299 N.W.2d 856 (1981).

¶ 27. The inquiry into whether a claim is frivolous involves a mixed question of fact and law. *Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 241, 517 N.W.2d 658 (1994). The determination of "what was known or should have been known" is a question of fact that is not disturbed "unless [it is] against the great weight and clear preponderance of the evidence," in other words, clearly erroneous. *Id.* However, "the ultimate conclusion about whether what was known or should have been known supports a finding of frivolousness" is a question of law, which we review independently of the circuit court. *Id.*

¶ 28. From the outset we note that frivolous claims are an especially delicate area of the law. *Radlein v. Indus. Fire & Cas. Ins. Co.*, 117 Wis. 2d 605, 613, 345 N.W.2d 874 (1984). A claim, action, or defense is frivolous if it was brought without any reasonable

---

[4] Wisconsin Statute § 814.025(3)(b) states that in order to find an action, special proceeding, counterclaim, defense or cross complaint to be frivolous, the court must find that "[t]he party or the party's attorney knew, or should have known, that the action, special proceeding, counterclaim, defense or cross complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law."

basis in law or equity. *Stern*, 185 Wis. 2d at 235. We resolve any doubts against a finding of frivolousness. *Id.*

██

¶ 29. Here, the circuit court found Brunson's motion for reconsideration to be frivolous. The motion centered on the issue of the reformation of the insurance policy. Yet, the issues of the applicability of the *Meyer* remedy after the enactment of Wis. Stat. § 632.32(4m)(d), and whether reformation of the policy to reflect the statutorily required level of UIM coverage would avoid the illusory contract problem, were sufficiently in doubt for this court to accept the court of appeals' certification in this case. Although in the end Brunson's arguments do not carry the day, they were not wholly lacking in reasonable basis. Accordingly, we conclude that the motion for reconsideration was not frivolous, and therefore reverse the circuit court's award of costs and attorney's fees against Brunson.

## V

¶ 30. In sum, we conclude that the circuit court's reformation of the UIM policy to provide $50,000 in UIM coverage was proper pursuant to the "conformance to law" clause in the policy and Wis. Stat. §§ 632.32(4m)(d) and 631.15(3m). Accordingly, the policy is not illusory, and Brunson is not entitled to the *Meyer* remedy. Furthermore, because Ward's $100,000 liability limits exceeded Brunson's UIM coverage limits, Ward was not an underinsured motorist as defined in the policy, and Brunson is not entitled to UIM benefits. Therefore, we affirm the circuit court's dismissal of Progressive from this action. However, because we conclude that Brunson's motion for reconsideration was

not frivolous, we reverse the circuit court's award of costs and attorney's fees against Brunson.

*By the Court.*—The order of the Waukesha County Circuit Court is affirmed in part and reversed in part.

¶ 31. ANN WALSH BRADLEY, J. *(dissenting)*.

"against the insurer"

What happened to those words? The majority opinion in essence rewrites Wis. Stat. § 631.15(3m) and deletes those words. The end result: the insurance company wins and the policyholder, who was sold illegal illusory coverage, inevitably loses.

¶ 32. How can this happen? Not easily. To reach this conclusion the majority must ignore the plain meaning of the statute, delete the problematic phrase "against the insurer," discard the stated clear and specific legislative intent, and misconstrue case law interpreting the statute. Because I disagree with this approach and believe that the majority's conclusion effectively transforms the insurance code into a safety net for those insurers who issue illegal policies, I respectfully dissent.

¶ 33. The majority opinion rests to a large degree on its misreading and misapplication of Wis. Stat. § 631.15. It apparently reads that statute to require a policy to conform to the insurance code in any case where the policy violates a state statute or rule. However, the statute does not command conformance to the statute in every case where there is a conflict between an insurance policy and a statute. Section 631.15(3m), by its plain language, requires conformance of the policy and enforcement of the statute only "against the insurer":

(3m) Enforcement of statute and rule require-
ments. A policy that violates a statute or rule is
enforceable *against the insurer* as if it conformed to
the statute or rule.

Wis. Stat. § 631.15(3m) (emphasis added).

¶ 34. The statutory language signifies that con-
formance of policies to the statutes under § 631.15(3m)
is not a two-way street. The benefits of § 631.15(3m)
are to flow in one direction only—in the direction of the
insured. If an insurer issues a policy inconsistent with
the Wisconsin Statutes, it cannot seek enforcement of
the statute of which it was in violation for its own
benefit. However, an insured may seek enforcement of
a statute where the policy has been issued in violation
of the statute to the insured's detriment.

¶ 35. While this is made clear from the express
language of the statute, legislative statements of intent
remove all doubt as to the intended effects of § 631.15.
The legislature explained the effects of the statute as
follows:

First, insured persons should always be able to
enforce rights given them under the contract as
issued. . . .
Second, contracts issued with terms deviating
in favor of the insurer from those prescribed by a
specific statute should be, in effect, reformed to
accord with the statute and then be enforced
against the insurer. This is standard common law
doctrine.

Comment to § 41, ch. 375, Laws of 1975, Wis. Stat.
Ann. § 631.15 (West 1995).

¶ 36. Today's majority contravenes not only the
language of the statute, but also the express intent of
the legislature. The majority does not enforce the stat-

ute "against the insurer" in this case, but against the insured. If the statutory language were followed and the intent of the legislature effectuated, Progressive would be obligated to satisfy Brunson's reasonable expectations and would be liable for the $25,000 of illusory coverage it issued under *Meyer v. Classified Insurance Co.*, 192 Wis. 2d 463, 531 N.W.2d 416 (Ct. App. 1995).

¶ 37. There is no question that unless the policy is reformed to comply with § 632.32(4m)(d) the UIM endorsement issued by Progressive is entirely worthless. It has been established that it is impossible to recover in any circumstance under a UIM endorsement providing $25,000 of coverage in Wisconsin. *Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 270–71, 500 N.W.2d 354 (Ct. App. 1993). As the court of appeals correctly explained in *Meyer* and *Hoglund* such an endorsement is wholly illusory and contrary to public policy.

¶ 38. To rectify the wrong committed upon Wisconsin insureds by the issuance of such policies, the court of appeals crafted the remedy that is at the center of this case. In *Meyer*, the court explained that an insurer issuing such an illusory policy was required to compensate the insured for damages exceeding the at-fault driver's liability limits up to the $25,000 limit of UIM coverage purchased by the insured. *Meyer*, 192 Wis. 2d at 469. Thus, Brunson would be entitled to have his reasonable expectations fulfilled. Progressive would be liable for the full amount of the $25,000 of worthless UIM coverage it issued. Today's majority lets Progressive off this hook.

¶ 39. The majority curiously asserts that the application of the statute actually operates to the insurer's detriment in this case because operation of § 631.15(3m) results in higher coverage limits. In

another case, higher coverage limits might operate against the interest of insurer. However, this is not such a case.

¶ 40. In this case, higher coverage limits operate to the benefit of the insurer by relieving the insurer of its liability and allowing the insurer to hide behind the very statute which it violated. By conveniently ignoring that the benefits of statutory conformance are always to inure to the benefit of the insured, the majority has effectively read the words "against the insurer" out of § 631.15(3m) and has flouted the legislative intent.

¶ 41. Its misreading of § 631.15(3m) has alsó caused the majority to misconstrue the case law interpreting the provision. The majority opinion discusses court of appeals decisions in *Appleton Papers, Inc. v. Home Indemnity Co.*, 2000 WI App 104, 235 Wis. 2d 39, 612 N.W.2d 760, and *Wisconsin Patients Compensation Fund v. St. Mary's Hospital of Milwaukee*, 209 Wis. 2d 17, 561 N.W.2d 797 (Ct. App. 1997), and concludes that they reach "conflicting results," because one conforms an errant policy to the statutes while the other does not. Because the majority fails to acknowledge that Wis. Stat. § 631.15(3m) requires enforcement only "against the insurer," it fails to see that the results of the two decisions, unlike the result of its own decision, are entirely consistent with the language of the statute and the legislative purpose.

¶ 42. In *Appleton Papers* the court of appeals required statutory conformance over the insurer's objections, where the *insured* sought enforcement of the statutory provisions to avoid an arbitration clause included in the policy by the insurer in contravention of the statutes. 2000 WI App 104, ¶ 42. In doing so, the court of appeals simply followed the legislative man-

date reforming terms of a policy deviating in favor of the insurer to comply with the statute and then enforcing it "against the insurer." In *St. Mary's* the court of appeals read § 631.15(3m) to prevent an *insurer* from invoking that provision to bring a policy into conformance with the statutes for its own benefit. 209 Wis. 2d at 35. In reaching its conclusion, the court of appeals correctly concluded that § 631.15 is intended to operate for the benefit of the insured and not to the benefit of the insurer. *Id.*

¶ 43. Finally, I note that the majority also rests its decision on the "conformance to law" clause contained in the policy. While we have enforced such provisions in the past, I have yet to find a case where we have enforced such a provision in a manner that allows an insurer to avoid the consequences of issuing an illusory and illegal policy. The facts before us do not suggest that we should begin to do so with this case.

¶ 44. Wisconsin courts had established that UIM coverage of $25,000 was illusory as far back as 1989.[5] On July 15, 1995, the legislature amended the statutes to require an insurer to issue minimum UIM coverage of $50,000. Yet, in November 1995, six years after the courts identified UIM coverage of $25,000 as illusory, and well after the statutory change was effective, Progressive sold Brunson an illegal six-month $25,000 UIM policy.

¶ 45. Brunson was severely and permanently injured in January 1996. It was not until June of 1996, after the accident and even after the policy had already expired, that Progressive eventually notified Brunson that it was of the opinion that his former policy actually

---

[5] *See Wood v. American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 653, 436 N.W.2d 594 (1989); *Kaun v. Industrial Fire & Cas. Ins. Co.*, 148 Wis. 2d 662, 670, 436 N.W.2d 321 (1989).

provided him with $50,000 in coverage. At no time while the policy was in effect did Progressive ever attempt to advise Brunson of a change in his $25,000 policy limits. Finally, two years later, in July 1998, while acknowledging that it had erroneously sold a $25,000 UIM policy to Brunson, Progressive requested that the trial court reform the policy to provide for $50,000 in coverage.

¶ 46. Public policy requires that we not allow insurers to accept the premium for a policy that is illusory as written and then fall back on the "conformance to law" clause of their policy when the deceptive nature of the policy they have drafted comes to light. Doing so transforms the insurance code into a safety net for insurers who issue illegal policies. The majority's decision provides no consequences for insurers that draft policies in advantageous contravention of the statutes.

¶ 47. Insurers now know that the conformance to law clause will remedy their statutory violation and save them from a judicially created penalty, such as the *Meyer* remedy, crafted to prevent such illegal policies. Thus, today's majority opinion not only fails to provide consequences for issuing a policy that violates the law, but instead confers a benefit for doing so. In arriving at this anomalous conclusion, the majority ignores the mandate of § 631.15(3m): it is only to be enforced "against the insurer."

¶ 48. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.