Russell C. Winchel and Krista J. Winchel, Plaintiffs-Appellants,
v.
State Bank of Cross Plains, Defendant-Respondent.
No. 03-3214.
Court of Appeals of Wisconsin.
Opinion Filed: August 26, 2004.
Before Deininger, P.J., Dykman and Vergeront, JJ.
¶1 PER CURIAM.
Russell and Krista Winchel appeal a judgment dismissing their complaint against the State Bank of Cross Plains. By previous orders the court dismissed certain claims against the bank, granted the bank's counterclaims, and awarded frivolous costs and fees to the bank. The Winchels challenge each of these rulings. We affirm each of them.
¶2 In 1998 the Winchels borrowed approximately $104,000 from the bank, on three loans. Their monthly payments on these loans totaled approximately $1,900. As protection, the Winchels purchased disability income insurance. Russell became temporarily disabled in September and October 1998, and the disability insurer paid the loan payments in full for one month.
¶3 However, the insurer subsequently concluded that its maximum obligation under the disability insurance contract did not exceed $1,000 per month, thus cutting in half the coverage that the Winchels believed they had.
¶4 The bank notified the Winchels of the problem, and offered to consolidate and rewrite the loans, on terms that would reduce the monthly payments to no more than $1,000. The Winchels accepted this offer in March 1999. The insurer subsequently made all payments on the renegotiated loans during Russell's second period of disability, lasting from April 1999 through August 2002.
¶5 Between July 1999 and August 2000, the Winchels obtained three new loans from the bank, a $35,000 car loan, $12,000 for personal expenses, and $65,000 on a home mortgage loan. The Winchels had also arranged for overdraft loans on their two checking accounts with the bank, and subsequently incurred more debt under those arrangements.
¶6 In December 2001, the Winchels commenced this action alleging that the bank coerced them into accepting the refinanced and consolidated loans in March 1999. They also alleged that the bank's actions caused them to pay higher interest rates than otherwise, caused them to default on other debt obligations, and damaged their reputation.
¶7 After filing their complaint, the Winchels' defaulted on their overdraft loans, and their car loan. The bank then counterclaimed for judgment on those defaulted loans.
¶8 In the first of the decisions under review, the trial court held that the only cause of action the complaint adequately presented was one for breach of the original contract to provide full disability insurance for the first three loans. The trial court later granted summary judgment to the bank on its loan default claims. When the Winchels moved for reconsideration of the partial summary judgment, the court not only denied relief, but held the motion frivolous because it merely presented the same arguments the court had already rejected.
¶9 Finally, the trial court granted summary judgment to the Bank on the Winchels remaining contract claim, concluding that no facts of record allowed an inference that duress caused them to enter the March 1999 agreements, and that the doctrine of novation therefore extinguished the breach of contract claim, premised as it was on the earlier loan agreements.
¶10 On appeal the Winchels argue that the trial court erred by dismissing what they characterize as claims for negligent and strict responsibility misrepresentation, and by granting summary judgment on their remaining claim and on the bank's claim. They also contend that the motion for reconsideration was not frivolous.
¶11 Winchels complaint failed to state a cause of action based on misrepresentation. They based their claim on the following paragraphs of the complaint:
7. In early March of 1999, plaintiff Russell C. Winchel contacted the defendant about a matter unrelated to the disability coverage on plaintiffs' loans. He spoke with Aaron Rawson, a loan specialist, who informed him that Michael Phillips, defendant's vice president and manager of its Mount Horeb branch, had negligently sold plaintiffs insurance coverage that was in fact non-existent. According to Rawson, plaintiffs had no coverage in effect despite the fact that they had been paying premiums for coverage on a monthly basis.
8. Plaintiff Russell C. Winchel and Rawson took the issue immediately to the then-president of the defendant, Lee Swanson, who assured plaintiffs that the defendant would rectify its mistake.
9. Instead of rectifying its mistake, the defendant forced the plaintiffs to refinance their existing notes to terms that would conform to certain disability income insurance that was then being offered by the defendant.
10. Defendant coerced the plaintiffs into consolidating notes 141258 and 141327 into a new note, No. 141463, with a smaller monthly payment but with a large balloon payment remaining at the end of the loan in the sum of $18,042.62.
11. Defendant coerced plaintiffs into accepting a reissue of note 141328 as No. 141464. The new note has a substantially longer repayment period with small monthly payments.
12. At the time that the defendant forced the plaintiffs to accept the new notes, the defendant knew that plaintiff Russell C. Winchel's health was in precarious condition, having just recovered from a short-term disability, and that the plaintiffs knew they could not risk losing their disability insurance coverage. Phillips told the plaintiffs that they had to accept the new notes with their new terms, or they would be denied any disability insurance coverage whatsoever. In effect, and in fact, plaintiffs had no choice.
Nowhere in those paragraphs do the Winchels identify any misrepresentations. Nowhere do they allege reliance on any misrepresentations. Both the fact of the misrepresentation, and reliance on it, are necessary elements of either negligent or strict responsibility misrepresentation. Selzer v. Brunsell Bros., 2002 WI App. 232, ¶32, 257 Wis. 2d 809, 652 N.W.2d 806. Even with notice pleading the complaint must show a justifiable claim for relief and provide a statement of the general factual basis. Alonge v. Rodriquez, 89 Wis. 2d 544, 552, 279 N.W.2d 207 (1979). We review the complaint de novo, Bartley v. Thomson, 198 Wis. 2d 323, 331, 542 N.W.2d 227 (Ct. App. 1995), and agree with the trial court that this complaint does not allege the necessary facts on misrepresentation.
¶12 The trial court properly granted the bank's summary judgment on the Winchels breach of contract claim, applying the doctrine of novation. That doctrine extinguishes claims based on a valid prior obligation if the parties agree to a new obligation, and the new obligation is valid and cancels the prior obligation. Siva Truck Leasing, Inc. v. Kurman Dist., 166 Wis. 2d 58, 67, 479 N.W.2d 542 (Ct. App. 1991). Although the Winchels contend that the renegotiated loans of March 1999, were invalid because they made them under duress, they offered no proof on summary judgment to support that conclusory allegation. Duress, as a defense to a contract obligation, requires proof of a wrongful or unlawful act or a threat depriving the person of his or her free will, resulting in a disproportionate exchange of values. Pope v. Ziegler, 127 Wis. 2d 56, 60, 377 N.W.2d 201 (Ct. App. 1985). Here, there is no proof of unlawful acts or threats, and no proof of a one-sided bargain. The Winchels received two new notes with lower payments and lower interest rates and were provided disability coverage. Consequently, the bank's submissions on summary judgment proved each element of novation, without dispute, and as a matter of law the breach of contract claim did not survive the March 1999 renegotiation.
¶13 The trial court also properly granted summary judgment on the bank's counterclaim. The Winchels do not contest the amount of the loans or the fact of their defaults. Their only defense is their claim that the bank's breach of contract and broken promises regarding their mortgage loan diverted money the Winchels needed to pay their defaulted loans. As noted, novation erased any breach of contract claim or defense as to the original loans from the bank. As to the mortgage loan, the Winchels offered no proof that the alleged wrongful acts of the bank caused the alleged hardship, even assuming that what occurred in an entirely separate transaction would provide a defense to the defaults on these loans. The only reasonable inference from the facts was that the Winchels voluntarily assumed more debt than they were able to repay.
¶14 The trial court properly awarded frivolousness costs and fees on the Winchels' reconsideration motion. The matter was briefed and affidavits submitted on summary judgment. The trial court granted judgment and carefully explained its decision. The request for reconsideration presented the identical arguments in the trial court's view, and in ours. The trial court may grant frivolousness costs if the party or the party's attorney should have known that the defense offered had no chance of success. See WIS. STAT. § 814.025(3)(b). This statute applies to motions for reconsideration. See Brunson v. Ward, 2001 WI 89, ¶26, 245 Wis. 2d 163, 629 N.W.2d 140. In this case, the Winchels had their ruling and they, and their attorney, should have known that the trial court would not retry the matter unless new facts or new arguments were presented.
By the Court.  Judgment affirmed.